IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| VINCENT E. JACKSON, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 14 C 2197 |
| | ) | |
| v. | ) | Judge Joan H. Lefkow |
| | ) | |
| N'GENUITY ENTERPRISES, CO. | ) | |
| and ALFRED BOWEN, | ) | |
| | ) | |
| Defendants. | ) | |

## OPINION AND ORDER

Plaintiff Vincent E. Jackson filed this suit against N'Genuity Enterprises, Co. ("N'Genuity") and Alfred Bowen for breach of fiduciary duty and violations of Arizona state law. Bowen has moved to dismiss under Federal Rules of Civil Procedure 12(b)(2) and 12(b)(3).[1] (Dkt. 13.) For the reasons stated below, the motion to dismiss is denied.

## BACKGROUND[2]

### I.  N'Genuity's Formation and Jackson's 2009 Suit

In April 2001, Jackson and Bowen's wife, Valerie Littlechief, formed N'Genuity, a wholesale food distributor. N'Genuity is an Arizona corporation with its principal place of business in Arizona. (Dkt. 1 ("Compl.") ¶¶ 6, 8.) Littlechief, an Arizona citizen, served as

---

[1] Bowen filed this motion jointly with N'Genuity. (*See* dkt. 13.) On July 28, 2014, however, N'Genuity filed a notice of bankruptcy under Chapter 11 of Title 11 of the United States Code. (Dkt. 41.) Accordingly, Jackson's suit against N'Genuity was automatically stayed, and this Opinion and Order only addresses personal jurisdiction and venue as to Bowen.

[2] The following facts are taken from the complaint and exhibits to the parties' pleadings and briefs and presumed true for the purpose of resolving the pending motion. *See Dixon* v. *Page*, 291 F.3d 485, 486 (7th Cir. 2002). Although Bowen urges the court to ignore additional assertions of fact not made in the complaint, the court may consider matters outside the pleadings, such as affidavits and other materials submitted by the parties in ruling on a motion to dismiss for lack of personal jurisdiction. *See Purdue Research Found.* v. *Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003); *Hollinger Int'l* v. *Hollinger, Inc.*, No. 04 C 0698, 2005 WL 589000, at *10 (N.D. Ill. Mar. 11, 2005).

1

N'Genuity's president and owned 51% of the shares, while Jackson, an Illinois citizen, was its secretary and owned the remaining shares. (*Id.* ¶¶ 8-9.) Between 2007 and 2009, Jackson grew suspicious that Littlechief was misappropriating corporate funds and using them to pay personal expenses and to pay family members who were not N'Genuity employees, including her husband and defendant in this suit, Bowen. (*Id.* ¶ 1; dkt. 24, Ex. 3 ¶¶ 23-24.) Jackson also suspected that Littlechief and other N'Genuity directors were attempting to dilute his shares. (Compl., Ex. 1 at 56.)

In 2009, Jackson filed case number 09 C 6010 in this court against N'Genuity, Littlechief, Bowen, and Bowen's son Dustin Bowen (an N'Genuity director), among others, for breach of fiduciary duty, violation of the Arizona Business Corporation Act, and civil conspiracy, and other claims ("the 2009 suit").[3] (*Id.* ¶ 1.) Many of the defendants in the 2009 suit, including N'Genuity, filed for bankruptcy protection and Jackson's claims against N'Genuity were tried before a bankruptcy court in Arizona. (*Id.* ¶¶ 1, 45.) The bankruptcy court awarded Jackson $500,000 and litigation expenses. It ordered that Jackson retain 49% interest in the reorganized company and that he be given notice of all N'Genuity meetings. (*Id.*, Ex. 1 at 102-03.) This court retained jurisdiction over Jackson's claims in the 2009 suit during the pendency of the bankruptcy proceedings, and that suit is still ongoing in this court.

## II.    Events Giving Rise to Jackson's Current Claims

The Arizona bankruptcy court confirmed N'Genuity's bankruptcy plan in April 2012 and N'Genuity's pre-bankruptcy debts were discharged as provided in the confirmation order. (*Id.*

---

[3] For a full history of the events leading up to Jackson's 2009 suit, *see Jackson* v. *N'Genuity*, No. 09 C 6010, dkt. 99, 2010 WL 3025015, at **1-2 (N.D. Ill Aug. 2, 2010) ("*Jackson I*").

¶ 44.) Jackson alleges that the reorganized N'Genuity, under Bowen's direction,[4] has continued to misappropriate funds and engage in other nefarious acts. For example, it has paid Bowen and his family members substantial amounts of money, both directly and through companies wholly owned by Bowen or his family members, in an attempt to render itself "equity poor." (*Id.* ¶¶ 54-57, 64-66, 70-72, 76, 78-80, 82-84.) This has devalued Jackson's interest in the company. (*Id.* ¶¶ 57, 81, 94.) And, to cover up its misconduct, it has refused to produce financial records to Jackson for inspection.

Based on this post-discharge misconduct, Jackson filed a second suit against Bowen and N'Genuity in this court.[5] He asserts a claim for violation of the Arizona Business Corporation Act, § 10-1602, against N'Genuity (Count I), seeks appointment of a receiver for N'Genuity (Count II), asserts a claim for breach of fiduciary duty against Bowen (Count III), and seeks an injunction barring dilution or Jackson's ownership interest in N'Genuity, payments or loans to Bowen and his family members for personal expenses, and the transfer of N'Genuity's assets or funds to any business entity in which Bowen or his family members have an ownership interest (Count IV). Bowen now moves to dismiss the complaint against him on personal jurisdiction and venue grounds.

## III. Bowen's Contacts with Illinois

According to Jackson, Bowen has maintained contacts with Illinois by daily communications with Jackson (who works out of his home in Illinois) between 2001 and 2008. (Dkt. 24, Ex. 3 ¶ 11.) He travelled to Illinois to meet with Jackson about N'Genuity in

---

[4] Although Bowen is not officially an employee of N'Genuity, he directs its business affairs and holds himself out as one of its directors. (Compl. ¶¶ 23, 28-29.)

[5] Other individual defendants named in Jackson's 2009 suit, such as Littlechief and Dustin Bowen, are still involved in personal bankruptcy proceedings before the Arizona bankruptcy court and thus are not named as defendants in this suit. (Compl. ¶ 4.)

Bolingbrook on November 8, 2008, and participated in the 2009 suit, including attending a hearing on November 29, 2011. (Compl. ¶ 20.) Additionally, Jackson alleges that Bowen traveled to Illinois "on behalf of N'Genuity to attend food shows and corporate meetings." (*Id.*) More generally, Jackson alleges that Bowen has managed N'Genuity over the past few years and has alternately produced or refused to produce financial records to Jackson and has engaged in misrepresentation and misconduct to reduce Jackson's his share of profits.

## ANALYSIS

I. **Personal Jurisdiction**[6]

   A. **Legal Standard**

Rule 12(b)(2) permits dismissal of a claim based on lack of personal jurisdiction over the defendant. *See* Fed. R. Civ. P. 12(b)(2). The party asserting personal jurisdiction bears the burden of proof. *See Purdue Research Found.* v. *Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003). When the court rules on the motion without a hearing, the plaintiff need only establish a "*prima facie* case of personal jurisdiction." *Id.* (quoting *Hyatt Int'l Corp.* v. *Coco*, 302 F.3d 707, 713 (7th Cir. 2002)). The court will "read the complaint liberally, in its entirety, and with every inference drawn in favor" of the plaintiff. *Cent. States, Se. & Sw. Areas Pension Fund* v. *Phencorp Reins. Co.,* 440 F.3d 870, 878 (7th Cir. 2006) (quoting *Textor* v. *Bd. of Regents of N. Ill. Univ.*, 711 F.2d 1387, 1393 (7th Cir. 1993)).

---

[6] As an initial matter, Jackson argues that Bowen has waived his challenge to personal jurisdiction and venue by participating in early proceedings in this suit. A party only waives the right to move to dismiss for lack of personal jurisdiction if it first makes a different motion under Rule 12 of the Federal Rules of Civil Procedure before it makes a Rule 12(b)(2) motion. *See* Fed. R. Civ. P. 12(g)(2), (h)(1). The court cannot find that Bowen's actions were more than participation in "[p]reliminary litigation actions," and such participation "do[es] not waive or forfeit personal-jurisdiction defenses." *Swanson* v. *City of Hammond, Ind.*, 411 F. App'x 913, 915-16 (7th Cir. 2011). Through this limited and early participation, Bowen did not create an expectation that he would "defend the suit on the merits," and accordingly did not waive his challenge to personal jurisdiction or venue. *Id.* at 916.

As the court is sitting in diversity, it has personal jurisdiction over Bowen to the extent that an Illinois court could exercise such jurisdiction. *See Philos Techs., Inc.* v. *Philos & D, Inc.*, 645 F.3d 851, 855 n.2 (7th Cir. 2011). Illinois allows for personal jurisdiction to the extent authorized by the Fourteenth Amendment's due process clause, which merges the federal constitutional and state statutory inquiries. *See N. Grain Mktg., LLC* v. *Greving*, 743 F.3d 487, 491-92 (7th Cir. 2014); *Tamburo* v. *Dworkin*, 601 F.3d 693, 700 (7th Cir. 2010); *see also* 735 Ill. Comp. Stat. 5/2–209(c). Under the Illinois long-arm statute, personal jurisdiction may be general or specific. *uBid, Inc.* v. *GoDaddy Grp., Inc.*, 623 F.3d 421, 425 (7th Cir. 2010).

**B.  General Jurisdiction**

General jurisdiction is a demanding standard under which a defendant only can be haled into an Illinois court if he has "'continuous and systematic general business contacts' with the forum state." *uBid*, 623 F.3d at 425-26 (quoting *Helicopteros Nacionales de Colombia, S.A.* v. *Hall,* 466 U.S. 408, 415-16, 104 S. Ct. 1868, 80 L. Ed. 2d 404 (1984)). The showing a plaintiff must make for the defendant to meet this standard is "rigorous, because 'the consequences [of general personal jurisdiction] can be severe[.]'" *Acuity* v. *Roadtec, Inc.*, No. 13 C 6529, 2013 WL 6632631, at *4 (N.D. Ill. Dec. 16, 2013) (quoting *uBid*, 623 F.3d at 426); *see also Sabados* v. *Planned Parenthood of Greater Ind.*, 882 N.E.2d 121, 128, 378 Ill. App. 3d 243, 317 Ill. Dec. 547 (2007) (internal quotation marks, citations, and brackets omitted) (standard for exercising general jurisdiction over entity doing business in Illinois is "rather high . . . because general jurisdiction establishes that the corporation has effectively taken up residence in Illinois and, therefore, may be sued on causes of action both related and unrelated to its activities in Illinois").

Jackson bases his argument for general jurisdiction over Bowen on a handful of visits to Illinois, his continued participation in the 2009 case, and telephone, email, and other

communications with Jackson regarding N'Genuity.[7] (Dkt. 24 at 5-6.) Jackson does not allege any contacts in addition to those alleged in the 2009 suit, and the court already determined there that these contacts do not meet the requirements for exercising general personal jurisdiction over an individual. *See Jackson I*, 2010 WL 3025015, at *3. Thus, Jackson's argument for general jurisdiction over Bowen fails.

### B. Specific Jurisdiction

Specific jurisdiction grows out of "the relationship among the defendant, the forum, and the litigation." *Walden* v. *Fiore*, -- U.S. ---, 134 S. Ct. 1115, 1121, 188 L. Ed. 2d 12 (2014) (quoting *Keeton* v. *Hustler Magazine, Inc.*, 465 U.S. 770, 775, 104 S. Ct. 1473, 79 L. Ed. 2d 790 (1984)). This type of jurisdiction requires that "(1) the defendant has purposefully directed his activities at the forum state or purposefully availed himself of the privilege of conducting business in that state, and (2) the alleged injury arises out of the defendant's forum-related activities." *N. Grain Mktg.*, 743 F.3d at 492 (quoting *Tamburo*, 601 F.3d at 701). "The exercise of specific jurisdiction must also comport with traditional notions of fair play and substantial justice." *Id.* (citing *Tamburo*, 601 F.3d at 702).

#### 1. Whether Bowen's Activities Were Purposefully Directed At Illinois And Jackson's Claim Arose Out Of Such Activities

The question of whether a defendant purposefully directed activities at a forum "depends in large part on the type of claim at issue." *Felland* v. *Clifton*, 682 F.3d 665, 674 (7th Cir. 2012). Jackson asserts a breach of fiduciary duty claim against Bowen based on Bowen's misrepresentation or concealment of N'Genuity assets and corporate documents, misappropriation of corporate funds, and intentional mismanagement of N'Genuity. Neither party address whether the court's analysis should be governed by Illinois or Arizona law, but law

---

[7] Bowen is domiciled in Arizona and there are no assertions that he was served in Illinois.

6

in both states indicates that Jackson's claim is properly classified as an intentional tort. *See, e.g., Appley* v. *West*, 929 F.2d 1176, 1180 (7th Cir. 1991) ("Illinois courts have recognized that common law fraud and breach of fiduciary duty are intentional torts[.]");[8] *F.D.I.C.* v. *Jamison*, CV-12-1508, 2013 WL 1335606, at *6 (D. Ariz. Mar. 29, 2013) (breach of fiduciary duty is intentional tort); *Standard Chartered PLC* v. *Price Waterhouse*, 945 P.2d 317, 334 (Ariz. Ct. App. 1996) (breach of fiduciary duty is tort). Because the court is comfortable characterizing breach of fiduciary duty as such under both Illinois and Arizona law, a choice of law analysis is unnecessary.

When dealing with intentional torts, the jurisdictional inquiry "focuses on whether the conduct underlying the claim[ ] was purposefully directed at the forum state." *Felland*, 682 F.3d at 674 (alterations in original) (quoting *Tamburo*, 601 F.3d at 702). Courts look to whether the defendant engaged in (1) intentional and allegedly tortious conduct, (2) expressly aimed at the forum state, (3) with the knowledge that such conduct would injure the plaintiff in the forum state. *Tamburo,* 601 F.3d at 703 (citing, *inter alia*, *Calder* v. *Jones,* 465 U.S. 783, 789-90, 104 S. Ct. 1482, 79 L. Ed. 2d 804 (1984)). "The defendant's conduct and connection with the forum state must be substantial enough to make it reasonable for the defendant to anticipate that he could be haled into court there." *N. Grain Mktg.*, 743 F.3d at 492. In other words, "the plaintiff cannot be the only link between the defendant and the forum. Rather, it is the defendant's conduct that must form the necessary connection with the forum State that is the basis for its jurisdiction over him." *Walden*, 134 S. Ct. at 1122 (citations omitted).

Judge Dow recently issued a carefully considered opinion examining the requirements of the "express aiming test" for specific personal jurisdiction, *see Mobile Anesthesiologists*

---

[8] *But see Kinzer ex. rel. City of Chicago* v. *City of Chicago*, 539 N.E.2d 1216, 1220, 128 Ill. 2d 437, 132 Ill. Dec. 410 (1989) (breach of fiduciary duty guided by the substantive laws of agency, contract, and equity).

7

*Chicago, LLC* v. *Anesthesia Assocs. of Houston Metroplex, P.A.*, 623 F.3d 440, 445 n.1 (7th Cir. 2010), under Seventh Circuit precedent and the recent Supreme Court case, *Walden*. *See Telemedicine Solutions LLC* v. *WoundRight Techs., LLC*, -- F. Supp. 2d ---, No. 13 C 3431, 2014 WL 1020936, at **6-11 (N.D. Ill. Mar. 14, 2014). In discussing Seventh Circuit cases, Judge Dow characterized the express aiming test as requiring a showing of "injury plus." *Id.* at *9. That is, the plaintiff must demonstrate not only that the defendant's tortious act injured him in the forum state, but that the defendant acted specifically to harm the plaintiff *in the forum state*. *See id.* at *10. In *Telemedicine*, for example, the plaintiff alleged that the defendant intentionally used the plaintiff's trade name and mark in an advertisement, defaming and disparaging the plaintiff and interfering with its business. But the court found that the plaintiff had not met all elements of the express aiming test because "[t]he only connection between Defendants' allegedly tortious ad and the forum state is Plaintiff's location there." *Id.* at *11. The advertisement was not targeted at Illinois, had nothing to do with Illinois, and the defendant was not active in the Illinois market.

By contrast, in the recent Seventh circuit case of *Felland*, the express aiming test was met where the out-of-state defendant made intentional misrepresentations to the Wisconsin plaintiffs. There, a Wisconsin couple vacationing in Arizona entered into a contract to purchase an unfinished condominium in Mexico. 682 F.3d 669. After returning to Wisconsin, the couple asked the developer for assurances that the unit would be finished on schedule. The developer sent several communications to the couple in Wisconsin, including emails, letters, and telephone calls, in which he assured them that the project was on schedule and asked them to continue making installment payments on the unit. The project was not completed on time and the couple sued in Wisconsin, arguing that the developer's repeated communications were sufficient to

allow the court to exercise personal jurisdiction over him. *Id.* at 669-70. The Seventh Circuit agreed, determining that all three parts of the express aiming test were met. As for the first and third elements, the defendant made intentional misrepresentations and there was "no doubt" that the defendant knew the harm would be felt by the plaintiffs in Wisconsin. *Id.* at 675. And as for the express aiming at the forum state element, the court found it to be satisfied because the plaintiffs alleged the defendant's communications lulled them into a false sense of security and induced them to make further payments to the defendant. *Id.* at 675-76.

In cases similar to the one at hand, courts have found that a breach of fiduciary duty claim against an out of state defendant supported the exercise of personal jurisdiction over the defendant in Illinois. For example, in *EEI Holdings Corp.* v. *Bragg*, 947 F. Supp. 2d 913 (C.D. Ill. 2013), an Illinois corporation brought suit in Illinois against a Pennsylvania corporation. The plaintiff alleged that the defendant improperly dissipated collateral that was supposed to be held in trust for the plaintiff, thereby breaching a fiduciary duty. *Id.* at 918-19. Based on this alleged breach of fiduciary duty and the defendant's knowledge that the plaintiff was an Illinois corporation, the court found that the defendant "'purposefully directed' allegedly–tortious conduct at the State of Illinois; thus, establishing minimum contacts." *Id.* at 919.

Given the protracted nature of the business relationship and the related dispute between Jackson and Bowen, the court cannot help but find that the express aiming test has been met. As noted above, the first element of the express aiming test is met because Jackson alleges that Bowen intentionally concealed N'Genuity documents, misappropriated funds, and engaged in self-dealing transactions. The third element is met because Bowen was aware that Jackson resided in Illinois and that his actions would harm Jackson there, given the prior interactions and litigation between the parties. As for whether the conduct was expressly aimed at Illinois, this

9

suit is distinguishable from a case like *Telemedicine*, in which the parties had no previous business relationship and the defendant had no connection to Illinois that would allow it to be haled into Illinois court. Instead, it is more like *Felland* or *EEI Holdings*, where the defendant's existing relationship with an in-state resident gave rise to jurisdiction. Bowen engaged in allegedly tortious conduct that he directed at the state of Illinois. He had already been haled into court once in this state for largely identical conduct. By continuing this conduct over the next half decade, holding himself out as an employee or director of a corporation partly owned by an Illinois resident and acting to Jackson's detriment, Bowen directed his acts not only at Jackson, but at the State of Illinois, and Jackson's claim arose directly out of these activities.[9] *See Felland*, 682 F.3d at 670 (plaintiffs' harm arose out of defendant's contacts with forum due to defendant's misrepresentations directed at plaintiffs in forum state).

### 2. Traditional Notions of Fair Play and Substantial Justice

Finally, the court must consider whether the exercise of personal jurisdiction over Bowen would offend traditional notions of fair play and substantial justice. *See N. Grain Mktg.,* 743 F.3d at 492 (quoting *Int'l Shoe Co.* v. *Wash., Office of Unemployment Comp. & Placement,* 326 U.S. 310, 316, 66 S. Ct. 154, 90 L. Ed. 95 (1945)). The factors considered are "the burden on the defendant, the forum State's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and the shared interest of the several States in

---

[9] Bowen rests much of his argument on the fact that in *Jackson I*, the court found it had specific personal jurisdiction over Bowen based on Jackson's civil conspiracy claim and supplemental jurisdiction over Jackson's breach of fiduciary duty and violation of the Arizona Business Corporation Act claim. *See Jackson I*, 2010 WL 3025015, at *6. Despite Bowen's insistence, however, the court did not directly address whether those two claims failed to support specific personal jurisdiction absent the civil conspiracy claim and thus *Jackson I* is not controlling.

10

furthering fundamental substantive social policies." *Felland,* 682 F.3d at 677 (quoting *Burger King Corp.* v. *Rudzewicz,* 471 U.S. 462, 477, 105 S. Ct 2174, 85 L. Ed. 528 (1985)).

Bowen has been litigating the related 2009 suit in this forum and has retained attorneys here. While Bowen may be burdened by having to defend another action in this state, "out-of-state defendants *always* face such a burden." *Felland,* 682 F.3d at 677 (emphasis in original). Moreover, Illinois—like all states—has an interest in providing a forum for its residents to seek redress for torts inflicted by out-of-state actors and injuries suffered within the state. From Jackson's perspective, this is the most convenient and effective forum to seek relief, and the court's intimate knowledge of the parties' history further supports an exercise of jurisdiction. That a bankruptcy court in Arizona is presiding over related issues does not strip this court of jurisdiction over Bowen. Thus exercising personal jurisdiction over Bowen does not run afoul of traditional notions of fair play and substantial justice.

**II.    Venue**

Bowen also moves to dismiss for improper venue pursuant to Federal Rule of Civil Procedure 12(b)(3). *See* Fed. R. Civ. P. 12(b)(3); *Caballero* v. *Taylor*, No. 12 C 8645, 2013 WL 2898254, at *1 (N.D. Ill. June 13, 2013). When a defendant challenges venue, the plaintiff bears the burden of establishing venue is proper. *Nat'l Tech., Inc.* v. *Repcentric Solutions*, No. 13 C 1819, 2013 WL 3755052, at *5 (N.D. Ill. July 16, 2013) (citing *Int'l Travelers Cheque Co.* v. *BankAmerica Corp.*, 660 F.2d 215, 222 (7th Cir. 1981)). If venue is improper, the court may either dismiss the suit or transfer it to a district in which the plaintiff could have filed it initially. *See* 28 U.S.C. § 1406(a). Venue can be proper in more than one court. *See Armstrong* v. *LaSalle Bank Nat'l Ass'n*, 552 F.3d 613, 617 (7th Cir. 2009).

11

The proper bases for venue are found in 28 U.S.C. § 1391(b), which provides that venue is proper in

> (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;
>
> (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or
>
> (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

28 U.S.C. § 1391(b). For venue to be proper under section 1391(b)(2), "[t]he test is not whether a majority of the activities pertaining to the case were performed in a particular district, but whether a substantial portion of the activities giving rise to the claim occurred in the particular district." *TruServ Corp.* v. *Neff*, 6 F. Supp. 2d 790, 792 (N.D. Ill. 1998) (citation omitted). "[F]or events to be considered 'substantial' under the statute, it is sufficient for the plaintiff to establish that the events occurring in the forum district 'were part of the historical predicate for the instant suit.'" *Estate of Moore* v. *Dixon*, 460 F. Supp. 2d 931, 936 (E.D. Wis. 2006) (quoting *Master Tech Prods., Inc.* v. *Smith*, 181 F. Supp. 2d 910, 914 (N.D. Ill. 2002)). These events must have a "close nexus" to the plaintiff's alleged claim. *Moore*, 460 F. Supp. 2d at 936 (quoting *Daniel* v. *Am. Bd. of Emergency Med.*, 428 F.3d 408, 433 (2d Cir. 2005)). For example, a plaintiff alleging fraudulent misrepresentation can establish venue under section 1391(b)(2) in the venue to which the fraudulent communication was sent. *See, e.g., Mercantile Capital Partners* v. *Agenzia Sports, Inc.*, No. 04 C 5571, 2005 WL 351926, at *5 (N.D. Ill. Feb. 10, 2005) (venue proper in Northern District of Illinois where defendant sent letter containing false representations to plaintiff in here).

Bowen argues that venue is not proper here because a substantial number of activities giving rise to Jackson's claim occurred outside this district.  But Jackson alleges that prior to 2008, Bowen contacted Jackson regularly regarding N'Genuity, supplying the historical predicate for this suit.  Moreover, Bowen, on behalf of N'Genuity, provided false and misleading materials to Jackson in Illinois through N'Genuity's counsel.  (Dkt. 24, Ex. 7.)  This conduct makes venue appropriate in this district.

## CONCLUSION

For the foregoing reasons, Bowen's motion to dismiss under Rule 12(b)(2) for lack of personal jurisdiction and Rule 12(b)(3) for improper venue (dkt. 13) is denied.  The parties shall report for the previously scheduled status hearing on August 28, 2014 at 11:15 a.m.

Date:  August 28, 2014

U.S. District Judge Joan H. Lefkow